# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                )
                                      )        **JUDGE RICHARD L. SPEER**
Shirley Semer                         )
                                      )        Case No. 11-3266
    Debtor(s)         )
                                      )        (Related Case: 11-35467)
Carla Morsey                          )
                                      )
    Plaintiff(s)       )
                                      )
      v.     )
                                      )
Shirley Semer                         )
                                      )
    Defendant(s)       )

## DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff's Complaint to determine the dischargeability of a particular debt. As the statutory basis for her Complaint, the Plaintiff cites to these two provisions: (1) 11 U.S.C. § 523(a)(2)(A), excepting from discharge a debt arising from a false pretense, a false representation, or actual fraud; and (2) 11 U.S.C. § 523(a)(6), excepting from discharge a debt arising from a willful and malicious injury. After considering the evidence presented at the Trial held on this matter, as well as the entire record of this case, the Court, for the reasons that will now be explained, finds that the Plaintiff's complaint has merit.

## BACKGROUND

The Defendant and Debtor in this matter is Shirley Ann Semer (hereinafter referred to as the "Defendant"). In January of 2004, the Defendant purchased a home in St. Marys, Ohio. This property was constructed in 1940.

In purchasing the St. Marys property, the Defendant's original intent was to use the property as a vacation home based upon its proximity to a lake. In the succeeding years, however, the property was often used as a primary residence by both the Defendant as well as family members of the Defendant. These persons included the Defendant's mother, who resided in the property from 2004 to 2006 and in 2007; the Defendant's sister, who lived in the property in 2006; and the Defendant's nephew, who lived in the property in 2009. The Defendant began occupying the property in late 2007.

After purchasing the St. Marys property, the Defendant made some improvements to the property. The majority of the improvements took place from 2007 to 2008, but some improvements occurred earlier. For example, in 2005 the Defendant installed a new furnace.

To effectuate the improvements made in 2007 and 2008, the Defendant relied mainly on the labor of her brother-in-law, David Hunter. For a number of years prior, Mr. Hunter, although not licensed as a contractor, supplemented his income by doing general home improvement and repairs on homes in the community. For his services, the Defendant paid Mr. Hunter $15.00 per hour. At times, the Defendant would also assist Mr. Hunter in his work.

The work performed by Mr. Hunter included installing patio siding and roofing shingles, and constructing a physical addition to the home. When undertaking these improvements, Mr. Hunter encountered some deficiencies with the integrity of the St. Marys property such as water damage and problems with the roof. When informed of the deficiencies, the Defendant directed Mr. Hunter to place cost considerations at the forefront which often meant that the deficiencies in the property were not actually repaired, but were instead simply hidden from view.

In 2010, the Defendant placed her St. Marys property up for sale, with an asking price of $69,900.00 (Ex. No. 8). After viewing the property, the Plaintiff offered, and the Defendant accepted, a $65,000.00 sale price for the property. A purchase contract was then executed to this effect. (Ex. No. 3).

11-03266-ssj    Doc 26    FILED 07/23/12    ENTERED 07/23/12 16:10:19    Page 2 of 14

On April 13, 2010, the Plaintiff acknowledged receipt of a "Residential Property Disclosure Form," as required by O.R.C. § 5302.30, in which the Defendant represented that there were no material problems with the property. (Ex. No. 9). On the same day, the Plaintiff signed an "inspection addendum" to the Parties' real estate purchase contract. The Defendant later signed this document, agreeing to allow the Plaintiff to hire a professional to perform an inspection of the St. Marys property.

Before a sale of the property was finalized, the Plaintiff exercised her right under the "inspection addendum." The inspection reported some minor defects to the St. Marys property – *e.g.*, small amounts of water damage. (Ex. No. 4). Based upon the report, the Plaintiff lowered her offer of purchase to $63,500.00. (Ex. No. 5). This offer was accepted by the Defendant and, in May of 2010, the Parties closed on their real estate transaction. (Ex. No. 6). To finance her purchase of the property, the Plaintiff obtained third-party financing, granting to the lender a mortgage interest in the property.

Shortly after purchasing the St. Marys property, the Plaintiff hired a contractor to repair some of the matters noted in the inspection report. Upon commencing work, the contractor discovered mold throughout the property as well as extensive structural and water damage. After an assessment of the deficiencies with the St. Marys property, it was determined that extensive repairs would be needed to properly remediate the property.

The evidence provided to the Court shows that the St. Marys property has since been stripped to its "skeleton." In its present condition, the property has an appraised value of $29,300.00. (Ex. No. 2). Because of the uninhabitable condition of the St. Marys property, the Plaintiff has relocated and now lives with her parents. The Plaintiff pays her parents $350.00 per month rent; as well, the Plaintiff rents a storage unit at a cost of $90.00 per month. The Plaintiff is also still liable for the mortgage obligation on the St. Marys property.

After discovering the condition of the St. Marys property, the Plaintiff brought suit in state court against both the Defendant and the entity performing the inspection report. A settlement, the amount of which was not disclosed to this Court, was reached in the litigation concerning the entity making the inspection report. The Plaintiff's suit against the Defendant, however, was stayed when, on October 10, 2011, the Defendant sought relief in this Court under Chapter 7 of the United States Bankruptcy Code. In response, the Plaintiff then commenced the matter now before the Court, seeking a determination that her claim against the Defendant is a nondischargeable debt.

## DISCUSSION

In this proceeding, the Plaintiff seeks a determination that the claim she holds against the Defendant is a nondischargeable debt. This type of proceeding, brought to determine the dischargeability of a particular claim, is deemed to be a "core proceeding" under 28 U.S.C. § 157(b)(2)(I). Accordingly, as a "core proceeding," this Court has the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

The Plaintiff's complaint to determine dischargeability is brought pursuant to 11 U.S.C. § 523(a)(2)(A), excepting from discharge a debt incurred by a debtor's fraud, and § 523(a)(6), excepting from discharge a debt arising from a debtor's willful and malicious conduct. Respectively, these provisions provide:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

For these provisions, the Plaintiff bears the ultimate burden of persuasion to establish, by at least a preponderance of the evidence, the applicability of either § 523(a)(2)(A) or § 523(a)(6). *Grogan v. Gamer*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This Court's discussion will begin with an examination of § 523(a)(2)(A).

To sustain an action under § 523(a)(2)(A), the Sixth Circuit Court of Appeals held that a party must satisfy each of these elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998), *citing Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993).

In bringing her complaint to determine dischargeability under § 523(a)(2)(A), the Plaintiff alleged that the Defendant falsely and "affirmatively represented to Plaintiff that [she] was not aware of any problems with the home regarding water infiltration, the roof, or any other deteriorating structural components." (Doc. No. 1, ¶ 11). According to the Plaintiff, she suffered damages as a result because such "defects had not been disclosed, but rather affirmatively represented as not to exist in the home, and the defects had been concealed, not remediated, by recent cosmetic fixes." (Doc. No. 1, ¶ 12).

Predicated on these statements, and based upon the evidence and arguments presented at the Trial, Plaintiff's § 523(a)(2)(A) action may be said to be based on two premises. First, much of the remedial work done to the St. Marys property by the Defendant was specifically undertaken to fraudulently conceal existing defects in the property in anticipation of a sale. Second, the Defendant defrauded the Plaintiff by affirmatively misrepresenting in the "Residential Property Disclosure Form" that no material defects existed in the St. Marys property.

For the positions advanced, the Court is not persuaded that the Plaintiff's first premise is supported by the weight of the evidence. This conclusion rests upon the general chronology of events which show that most of the major repairs to the property took place in 2007 and 2008, well before 2010, when the Defendant placed the property up for sale. Most of the repairs to the property were also made at a time when either the Defendant or close family members were living in the property. Together, these considerations strongly suggest that the Defendant's primary motivation in undertaking to repair the St. Marys property was to make the property more inhabitable, not more marketable.

The result, however, is different for those representations made by the Defendant in the "Residential Property Disclosure Form." Ohio's real property disclosure statute, O.R.C. § 5302.30, requires that when real estate is to be sold, the seller must disclose patent or latent defects within their actual knowledge on a residential property disclosure form. Ohio law provides that if a seller of real estate fails to disclose a material fact on the form, with the intention of misleading the buyer, and the buyer relies on the form, the seller is liable for any resulting injury. *Rodgers v. Sipes*, Slip Copy, 2012 WL 2553921 *7 (Ohio App. 3rd Dist. 2012). Furthermore, it has been recognized in this district that, if liability exists against a debtor for failing to comply with O.R.C. § 5302.30, an action under § 523(a)(2)(A) may be sustained on the basis that the debtor executed the "Residential Property Disclosure Form" in a fraudulent manner. *Blascak v. Sprague (In re Sprague)*, 205 B.R. 851, 860 (Bankr. N.D.Ohio 1997).

In this case, the property disclosure form executed by the Defendant set forth these statements and respective responses:

C) ROOF: Do you know of any current leaks or other material problems with the roof or rain gutters?

Response: NO

D) WATER INTRUSTION: Do you know of any previous or current water leakage, water accumulation, excess moisture or other defects to the property, including but not limited to any area below grade, basement or crawl space?

Response: NO

Do you know of any water or moisture related damage to floors, walls or ceilings as a result of flooding; moisture seepage; moisture condensation; ice damming; sewer overflow/backup; or leaking pipes, plumbing fixtures or appliances?

Response: NO

E) STRUCTURAL COMPONENTS (FOUNDATION, BASEMENT/CRAWL SPACE, FLOORS, INTERIOR AND EXTERIOR WALLS): Do you know of any movement, shifting, deterioration, material cracks/settling (other than visible minor cracks or blemishes) or other material problems with the foundation, basement/craw space, floors, or interior/exterior walls?

Response: NO

All the above negative responses provided by the Defendant are clearly inaccurate.

The evidence presented in this case, both pictorial and testimonial, shows that the St. Marys property had extensive damage throughout as the result of unwanted water infiltration. Related damage to the property included, but was not limited to the existence of mold, wet insulation, walls separated from the foundation, rotten wood, missing insulation between the house and the siding, holes in the plywood on the exterior of the house underneath the siding, and rotten wood under new shingles. The evidence also shows that the structural integrity of the property's roof was an issue.

Consistent with the first element of § 523(a)(2)(A), the evidence in this case supports the Plaintiff's position that the Defendant must have known that her statements made in the "Residential Property Disclosure Form" were false. First, the evidence shows that Mr. Hunter, who was hired by the Defendant to perform work at the St. Marys property, informed the Defendant of the structural defects in the property, even going so far as to show the Defendant the latent water damage.

In addition, and although there was disagreement as to extent in which the Defendant was personally involved in the repairs to the St. Marys property, this much is clear: Mr. Hunter performed much of the work on the property in 2007 and 2008; the Defendant began to live in the property in late 2007; and the work done by Mr. Hunter to the property required the removal of drywall and siding, thus revealing, for any observer to see, many of the defects in the property which would have otherwise remained concealed.

The extent of the defects in the St. Marys' property also make it unlikely that the Defendant could have remained completely ignorant of the property's condition. In fact, the evidence in this case shows that the St. Marys property had a patent defect, a sagging roof. Moreover, the property's age, being constructed in 1940, should have put any prudent seller on alert that material problems could exist.

Based on the totality of these considerations, any assertion of ignorance on the part of the Defendant cannot be construed as genuine. Accordingly, consistent with the first requirement necessary to sustain an action under § 523(a)(2)(A), it is the finding of this Court that the Defendant must have known that the representations she made in the "Residential Property Disclosure Form" were materially false.

The second element needed to sustain an action under § 523(a)(2)(A) requires that it be shown that "the debtor intended to deceive the creditor." *In re Rembert*, 141 F.3d at 280. For this purpose, "[w]hether a debtor possessed an intent to defraud a creditor within the scope of § 523(a)(2)(A) is measured by a subjective standard[.]" *Id.* at 218, *citing Field v. Mans*, 516 U.S. 59, 70-72, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995). When applying a subjective standard, this Court has explained that as an evidentiary matter: "Whether a debtor subjectively intended to perform as promised is a factually intensive inquiry and, since a debtor will rarely admit to acting in a fraudulent manner, circumstantial evidence will often be needed to determine if the debtor acted with the requisite intent." *Bartson v. Marroquin (In re Marroquin)*, 441 B.R. 586, 593 (Bankr. N.D.Ohio 2010).

Page 8

Carla Morsey v. Shirley Ann Semer
Case No. 11-3266

In this matter, the circumstances indicating a subjective intent to deceive the Plaintiff, by making false representations on the "Residential Property Disclosure Form," can be inferred from the Defendant's acknowledgment that, as with most sellers, she was eager to sell the property. In this regard, the Defendant testified that she had recently married and that renting the St. Marys property had become a burden. It is, therefore, reasonable to posit that the Defendant would have been eager to avoid anything that would have made the St. Marys property difficult to sell – particularly, an acknowledgment that the property suffered from material defects. A like inference was previously made in this judicial district in the case of *Blascak v. Sprague (In re Sprague)*, 205 B.R. 851(Bankr. N.D.Ohio 1997).

In *In re Sprague*, the debtors, in selling their residence, made multiple false statements in the disclosure statement required by O.R.C. § 5302.30. After finding that the debtors must have known their statements to be false, the court explained:

> While Defendants' testimony may not establish actual intent, other evidence indicates that Defendants' representations to Plaintiffs were made in gross recklessness for the truth. Defendants were aware that the purchase of their home would involve disclosure of pertinent information related to the physical condition of the home. Defendants also knew or should have known that such information was to be detailed on their real estate disclosure form as required by state law. Defendants further understood that the purpose of this form was to inform Plaintiffs of the history and physical condition of the property. The disclosure form is to be completed irrespective as to whether Plaintiffs themselves opt to have the property inspected or independently appraised.

The court in *In re Sprague* then concluded by stating that "an intent to deceive may logically be inferred from a false representation or false pretense which the debtor knows or should know will induce another individual to part with property . . . ." *Id.* at 861 (internal quotation and citation omitted). Similarly, in this case, there is no reason to suppose that the Defendant was not aware that the purpose of "Residential Property Disclosure Form" was to inform the Plaintiff of the history and physical condition of the St. Marys property.

Page 9

In response, the Defendant made a pro forma argument claiming that, when completing the disclosure form, she did not really pay attention to the questions, presupposing that a "no" response was to be provided on the disclosure form as a matter of course. The evidence before the Court, however, belies this position. Most noticeably, the Defendant, by agreeing to an "inspection addendum" to the Parties' real estate purchase contract, knew that the Plaintiff placed importance on the disclosures made with respect to the condition of the St. Marys property. This observation is underscored by the Plaintiff having signed both the disclosure form and the "inspection addendum" on the same day, April 13, 2010.

Even this aside, the Court, after listening to the Defendant's testimony, was not given the impression that the Defendant was naïve on financial matters, including real estate transfers. The Court, thus, does not find it credible that the Defendant would have been ignorant to the importance attached to statements made on legal documents such as a "Residential Property Disclosure Form."

The third element necessary to sustain an action under § 523(a)(2)(A) requires the creditor to show that they relied on the false representation. In *Field v. Mans*, the United States Supreme Court held that the standard of reliance needed under § 523(a)(2)(A) is that of justifiable, as opposed to the higher standard of reasonable reliance. 516 U.S. 59, 74–75, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995). The difference between the two standards is that the former is subjective, whereas the latter standard is objective. *Eugene Parks Law Corporation Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1459 (9th Cir.1992). This means that when assessing whether a creditor's reliance is justifiable, the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, must be taken into account. *Buckland v. Stanley–Snow (In re Stanley–Snow)*, 405 B.R. 11, 23 (B.A.P. 1st Cir.2009) A community standard of conduct is not applied. *Id.*

In this matter, it is beyond reproach that the Plaintiff justifiably relied on the false representations made by the Defendant in the "Residential Property Disclosure Form." Underpinning this conclusion is the fact that the undisclosed defects at issue in this case were largely latent defects,

hidden from view. At the same time, the Plaintiff took all reasonable measures within her power to assess the condition of the St. Marys property.

First, prior to purchasing the St. Marys property, the Plaintiff personally inspected the property on at least two occasions. The Plaintiff, therefore, could not have discovered the defects through a basic inspection of the property. The Plaintiff then performed an additional degree of due diligence by hiring a contractor to professionally inspect the property.

Finally, consistent with the last § 523(a)(2)(A) element, the Plaintiff testified that, had she known the true condition of the St. Marys property, she would not have purchased the property for the sum of $63,500.00. Given the scope of the latent defects to the St. Marys property, the Court has no reason to question this statement. As such, the last element of the § 523(a)(2)(A) test has been met, with the Plaintiff sustaining her evidentiary burden of showing that the false statements made by the Defendant in the "Residential Property Disclosure Form," were the proximate cause of loss.

In summation, the Court finds that, with respect to the "Residential Property Disclosure Form," the Plaintiff has sustained her evidentiary burden, by showing the existence of each of the elements necessary to maintain an action under § 523(a)(2)(A). Based upon this determination, the Court declines to address the Plaintiff's cause of action under § 523(a)(6). The last issue before the Court concerns damages.

As a part of this Court's finding of a nondischargeable debt, the Plaintiff asks that this Court liquidate her claim and award her damages, including punitive damages and attorney fees. Given the circumstances presented in this matter, the Court finds that an award of actual damages and attorney fees is warranted. The Court, however, declines to award punitive damages as there is nothing in this case to suggest that the Defendant needs to be punished or deterred in the future from engaging in the conduct which gave rise to the Plaintiff's complaint. *Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 800 (6th Cir. 2002) ("the purpose of a punitive damage award is to deter future wrongdoing as well as to punish wrongdoers.").

The Plaintiff's actual damages shall include the sum of $34,200.00, representing the difference between the purchase price of the St. Marys property ($63,500.00) and the present value of the property ($29,300.00). As well, the Plaintiff shall be entitled to her out-of-pocket expenses, including the monthly rent the Plaintiff pays to her parents ($350.00) and the monthly rent the Plaintiff pays to lease a storage unit ($90.00). Such out-of-pocket expenses, however, shall not be allowed in perpetuity as the Plaintiff is under a duty to mitigate her damages.

Notwithstanding, the Court cannot at this time liquidate the Plaintiff's actual damages. The evidence before the Court indicates that, as against the entity performing the inspection report on the St. Marys property, the Plaintiff reached a monetary settlement of an unknown amount. Any funds received by the Plaintiff as the result of this settlement, however, must be subtracted from any damage award made to the Plaintiff. Accordingly, to liquidate the Plaintiff's damages, the Plaintiff shall be required to file with the Court an itemized list setting forth her actual damages, including attorney fees, with due allowance made for the prior settlement reached with the entity performing the inspection report. The Defendant shall then be afforded the opportunity to respond to the report.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Carla Morsey v. Shirley Ann Semer
Case No. 11-3266

It is therefore

**ORDERED** that the claim held by the Plaintiff, Carla Morsey, against the Defendant, Shirley Ann Semer, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT pursuant to 11 U.S.C. § 523(a)(2)(A).

**IT IS FURTHER ORDERED** that, consistent with this Decision, the Plaintiff shall file with the Court by Monday, August 20, 2012, an itemized list of her actual damages, including attorney fees. The Defendant shall be afforded until Monday, September 3, 2012, to file a response to this list of damages.

Dated: July 23, 2012

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 13

# *CERTIFICATE OF SERVICE*

Copies were mailed this 23rd day of July, 2012 to:

Carla Morsey
150 Parkway Court
St. Marys, OH 45885

David M. Treadway
108 East Poplar Street
Sidney, OH 45365

Shirley Ann Semer
6201 Bergner Rd.
Convoy, OH 45832

Randy Lee Reeves
973 W North St
Lima, OH 45805


_____/s/Diana Hernandez_____
Deputy Clerk, U.S. Bankruptcy Court